UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT LEFLER,

               Plaintiff,                                         Hon. Gordon J. Quist

v.                                                        Case No. 1:10-CV-800

UNKNOWN PARTY #1, et al.,

               Defendants.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendant Correctional Medical Services, Inc.'s Motion to Dismiss, (dkt. #13), and Defendant Dr. Haresh Pandya's Motion for Summary Judgment, (dkt. #23).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that both motions be **granted**.


## BACKGROUND

        Plaintiff initiated this action against Correctional Medical Services, Inc. (CMS), Hurley Medical Center, and the following individuals: (1) John Doe #1; (2) John Doe #2; (3) Jane Doe; (4) Unknown Wolfgang; (5) T. Grubaugh; (6) S. Gregurek; (7) J. Schooley; (8) Scott Holmes; and (9) Dr. Haresh Pandya.  In his complaint, Plaintiff makes the following allegations.

        On September 7, 2007, Plaintiff was being transferred from the Saginaw Correctional Facility (SRF) to the St. Louis Correctional Facility (SLF).  Plaintiff's request to have his seat belt properly secured was ignored.  While in transit, the vehicle in which Plaintiff was being transported was involved in an accident causing Plaintiff to experience back and neck pain.  Plaintiff was transported

to Hurley Medical Center.  While Plaintiff was awaiting treatment, Defendant Wolfgang began yelling at Plaintiff and several other prisoners, calling them "babies" and threatening to show them "what real pain is."  Defendant Wolfgang later began yelling at medical personnel for treating Plaintiff and "forced [them] to stop treating" him.

Plaintiff was then transferred to SLF, where he was examined by a Registered Nurse. Plaintiff was told he would be examined by a doctor the following day "if they could fit him in." Plaintiff was not examined by a doctor until "roughly" four days later, at which time x-rays were performed.  Plaintiff continued to experience severe pain.  On November 13, 2007, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed "mild" stenosis without evidence of misalignment, signal abnormality, fracture, or spinal cord compression.  An MRI of Plaintiff's thoracic spine, performed the same day, revealed protruding discs at T6-7 and T7-8 without evidence of misalignment, signal abnormality, stenosis, or spinal cord abnormality.  As a result of this examination, Plaintiff was given even stronger pain medication and muscle relaxers.  Plaintiff continued to experience pain, however, and his requests for a back brace and to be examined by a specialist were denied.  At some point in 2010, Plaintiff was given a TENS unit which "helped a great deal in relieving [his] pain."

Plaintiff alleges that the decision by Defendants to transport him without first properly securing his seat belt violated his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff also alleges that his Eighth Amendment rights were violated by the inadequate treatment of his injuries and pain.  Plaintiff further alleges that Defendants' failure to administer pain medication, a TENS unit, tennis shoes, and back brace in a timely manner violated his Eighth Amendment rights.  Plaintiff also alleges violations of his rights to due process and equal protection.

Finally, Plaintiff alleges various state law claims. Plaintiff requests declaratory, injunctive, and monetary relief.

On September 17, 2010, the Honorable Gordon J. Quist dismissed with prejudice Plaintiff's claims against Defendants Wolfgang, John Doe #1, John Doe #2, Jane Doe, T. Grubaugh, J. Schooley, and Hurley Medical Center. (Dkt. #5-6). Defendant CMS now moves to dismiss Plaintiff's allegations for failure to state a claim on which relief may be granted and Defendant Pandya moves for summary judgment. As discussed below, the undersigned recommends that both motions be granted.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

As the Supreme Court recently stated, a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's

liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*

As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein.  *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also, Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Correctional Medical Services (CMS)**

CMS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001).  To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS policy, practice, or custom.  *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom based on an allegation that CMS failed to act, as is the case here, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that CMS had notice or constructive notice of such; (3) that CMS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation.  *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff does not allege in his complaint that his constitutional rights were violated by any policy, custom, training, or practice.  Likewise, he has not alleged any facts from which such can

reasonably be inferred. In this respect, the Court notes that while Plaintiff asserts various legal conclusions that CMS violated his rights, Plaintiff's complaint contains absolutely no *factual* allegations against CMS. Thus, Plaintiff has failed to state a claim against CMS. Accordingly, the undersigned recommends that Defendant CMS' motion to dismiss be granted.

## II.        Defendant Pandya

### A.        Eleventh Amendment Immunity

Defendant Pandya asserts that he is entitled under the Eleventh Amendment to immunity from Plaintiff's official capacity claims. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to

comply with federal law.  *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) ("[u]nder the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

In his complaint, Plaintiff states that he is suing Defendant Pandya in both his personal and official capacity seeking declaratory, injunctive, and monetary relief.  Accordingly, the undersigned recommends that to the extent Plaintiff seeks monetary damages from Defendant Pandya in his official capacity, such claims be dismissed on Eleventh Amendment grounds.

B.      Exhaustion

Defendant Pandya asserts that he is entitled to relief because Plaintiff has failed to properly exhaust any of the claims asserted against him.  As detailed below, the Court agrees.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is
> required by the PLRA to 'properly exhaust.'   The level of detail

-9-

necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,*544 U.S. 928 (2005).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005),

-10-

*cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations").  Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a).  *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P-Q.  The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.  *Id.* at ¶ BB.  The respondent at Step II is designated by policy, e.g.*,* the regional health administrator for grievances concerning health care issues.  *Id.* at ¶ DD.  If the inmate is still dissatisfied with the Step II response, or does not receive a

timely Step II response, he may appeal to Step III.  *Id.* at ¶ FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances.  *Id.* at ¶ GG.  The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II."  *Id.* at ¶ S.

In support of his motion, Defendant has submitted evidence concerning three grievances Plaintiff filed with prison officials.  Plaintiff has failed to respond to Defendant Pandya's motion.  Before analyzing the exhaustion issue, clarification of the precise claim(s) asserted by Plaintiff against Defendant Pandya is necessary.  The only claim that Plaintiff has asserted against Defendant Pandya is that he "disregarded the referral from Kelly S. Stevens (R.N.) on Spetember 11, 2009 for a Medical Specialist Physician (M.P.S.)."  (Dkt. #1 at ¶¶ 29, 42).

1.      Grievance IBC-10-04-996-20b

Plaintiff initiated this grievance on April 3, 2010, requesting that he (and others) be permitted to participate in group worship services.  (Dkt. #24, Exhibit A).  While Plaintiff pursued this grievance through all three steps of the grievance process, such fails to exhaust any claim asserted against Defendant Pandya.

2.      Grievance IBC-09-12-4219-12d

Plaintiff filed this grievance on December 3, 2009, alleging that "Scott Holms" was refusing his requests to be examined by a back and neck specialist.  (Dkt. #24, Exhibit A).  While Plaintiff pursued this grievance through all three steps of the grievance process, such fails to exhaust any claim asserted against Defendant Pandya.

3.      SRF-2007-04-2008-12d1

Plaintiff filed this grievance in April 2007, regarding an incident that occurred on April 15, 2006.  (Dkt. #24, Exhibit A).  This grievance was filed before the events giving rise to the present action and, therefore, fails to exhaust any claim asserted herein against Defendant Pandya.

Defendant Pandya has submitted evidence that these are the only three grievances that Plaintiff has pursued through Step III of the grievance process.  (Dkt. #24, Exhibit A).  As Plaintiff has failed to even respond to Defendant Pandya's motion for summary judgment, the Court finds that Defendant has satisfied his burden of establishing that Plaintiff has failed to properly exhaust any claim asserted against him in the present action.  Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Pandya be dismissed without prejudice for failure to properly exhaust administrative remedies.

C.      Summary Judgment

Defendant Pandya also moves, in the alternative, for summary judgment on two separate grounds.  For the reasons discussed herein, the undersigned recommends that Defendant is not entitled to relief on these grounds.

Federal law provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Defendant argues that Plaintiff's claims must be dismissed for failure to satisfy this requirement. The Sixth Circuit has observed that while *de minimis* injuries are insufficient, a prisoner's injuries "need not be significant" to satisfy the physical injury requirement articulated in § 1997e(e). *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010).

It is not disputed that Plaintiff was involved in the September 7, 2007 automobile accident described above. The evidence Plaintiff has attached to his complaint reveals that following an October 19, 2007 examination, he was diagnosed with cervical radiculopathy and thoracic and cervical discitis status post motor vehicle accident. The results of a November 13, 2007 MRI revealed evidence of stenosis of the cervical spine and two protruding discs of the thoracic spine. While these impairments appear to have been relatively mild in severity, interpreting this evidence in a light most favorable to Plaintiff, the Court concludes that Defendant has failed to demonstrate that Plaintiff's injuries were *de minimis* or otherwise insufficient to satisfy the physical injury requirement of § 1997e(e). Accordingly, the undersigned recommends that Defendant Pandya is not entitled to summary judgment on this basis.

Defendant Pandya next asserts that he is entitled to summary judgment because "[t]he allegations made by Plaintiff regarding his medical care and treatment amount to a disagreement with the treatment he received or the timeliness of the treatment and do not support a finding of deliberate indifference under the Eighth Amendment."

-14-

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle*, 429 U.S. at 101-02. Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

When evaluating the objective prong of this analysis, the Court must first determine whether the alleged injury or medical need is "obvious," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004); *see also, Cain v. Irvin*, 286 Fed. Appx. 920, 927 (6th Cir., July 17, 2008). If the injury or medical need is obvious, the question becomes whether the plaintiff received treatment "within a reasonable time." *See Blackmore*, 390 F.3d at 899-900 (where the plaintiff's injury or medical need is obvious, he satisfies the objective prong of the analysis by demonstrating that "he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame"). If, on the other hand, the injury or medical need is not obvious, the plaintiff must submit "medical evidence" demonstrating that the delay or denial of treatment "resulted in additional injury." *Id.*

If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that the defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Plaintiff may disagree with Defendant's treatment decisions and, furthermore, may even consider such decisions to constitute negligence.  To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

With respect to this particular issue, Defendant correctly asserts that a treatment decision "made by a professional, is presumptively valid" and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). As the *Youngberg* Court further observed, and Defendant asserts, "[t]he Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Id.* at 321.

As previously noted, the only claim Plaintiff has asserted against Defendant Pandya is that he "disregarded the referral from Kelly S. Stevens (R.N.) on Spetember 11, 2009 for a Medical Specialist Physician (M.P.S.)." While Defendant argues that Plaintiff's claim reflects nothing more than his disagreement with the treatment he received, Defendant has neither submitted nor identified any evidence that supports his argument that his alleged failure to accede to the referral from nurse Stevens was the product of professional judgment.

In his affidavit, Defendant Pandya does not deny Plaintiff's allegations or assert that he exercised medical judgment relative thereto. (Dkt. #24, Exhibit B). Rather, Defendant merely asserts that "[t]o the best of my knowledge, the abbreviation 'MSP' was never used to describe a 'Medical Specialist Physician,' 'Consultant,' 'Consulting Physician' or their speciality designating word; i.e., Neurologist, Orthopedist, Neurosurgeon, Urologist, Surgeon, Physical Therapist, Podiatrist, Optometrist, Psychologist, etc." *Id.* Defendant does not dispute the allegation that Nurse Stevens recommended that Plaintiff be examined by a specialist or that he declined to agree to such. Defendant, instead, merely retorts that Plaintiff utilized the incorrect proper noun in articulating his allegation. Such is not a basis for granting a motion for summary judgment.

In sum, Defendant asserts that he is entitled to relief because Plaintiff merely disagrees with his medical judgment.  In the absence of evidence that Defendant exercised any medical judgment relative to the particular allegation in question, the undersigned recommends that Defendant Pandya is not entitled to relief on this basis.

D.     Qualified Immunity

Finally, Defendant Pandya asserts that he is entitled to qualified immunity.  For the reasons articulated below, the undersigned disagrees.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation.  *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).  As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated.  *Id.*  Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).  The question of whether a defendant enjoys qualified immunity is a question of law for the Court to resolve.  *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If such fail to establish a violation of the plaintiff's constitutional rights, the

defendant is entitled to immunity.  *See Callahan*, 129 S.Ct. at 816.  On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted.  The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right."  *Id.*

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights.  If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above.  Thus, if the evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted.  However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate.  *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights).

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself."  *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)).  In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting."  *Fisher*, 398

F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202). Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two steps (identified above) in sequence, such is no longer mandated. *See Callahan*, 129 S.Ct. at 818 ("[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

As previously stated, where a request for qualified immunity is accompanied by evidence, the evaluation of which demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted. As discussed in the preceding section, the evidence thus far submitted does not support Defendant's claim that he is entitled to summary judgment. The undersigned, therefore, recommends that Defendant Pandya is not entitled to qualified immunity.

III.          **Defendants Gregurek and Holmes**

      Plaintiff initiated this action on August 12, 2010, against numerous defendants including S. Gregurek and Scott Holmes.  On September 17, 2010, the Honorable Gordon J. Quist ordered that service be effected on various defendants, including Defendants Gregurek and Holmes.  Summonses for Defendants Gregurek and Holmes were issued on September 21, 2010.  These summonses were returned unexecuted on December 30, 2010.  In the six months since, Plaintiff has neither requested an extension of time to effect service on Defendants Gregurek or Holems nor has he requested the Court's assistance in effecting service on these defendants.

      Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint."  The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  If the plaintiff demonstrates good cause for such failure, however, "the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).  Considering Plaintiff's lack of diligence, the Court recommends that Plaintiff's claims against Defendants Gregurek and Holmes be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

      For the reasons articulated herein, the undersigned recommends that Defendant Correctional Medical Services, Inc.'s Motion to Dismiss, (dkt. #13), be **granted**; and Defendant Dr.

<u>Haresh Pandya's Motion for Summary Judgment</u>, (dkt. #23), be **granted**.  The undersigned also recommends that Plaintiff's claims against Defendant Gregurek and Defendant Holmes be dismissed without prejudice for failure to timely effect service and this action **terminated**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  June 29, 2011
                                          /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge